hLANDRIEU, Judge.
This case concerns a two-car traffic accident. After a bench trial, the district court assessed fault at fifty percent for each driver. The court awarded damages of $1,179.49 to plaintiff, Louise Parker, who owned the car driven by her daughter, plaintiff Debra Casimire, for damage to the car. The district court found no injuries suffered by Casimire and did not award her any damages, though Casimire claimed injuries and medical expenses of $1,210.00.
Plaintiffs now appeal. They claim the district court erred in allocating fifty-percent fault to Casimire and in failing to award Casimire damages for her alleged injuries. Finding no merit to these claims, we affirm the district court’s judgment.
On November 24, 1994, Casimire was driving Parker’s car. Parker was not a passenger. As Casimire exited I — 10 onto Chef Menteur Highway, she collided with Pounds’s car.
Herbert Lipscomb, a disinterested eyewitness, was standing in the lobby of the Family Inns hotel at the corner of the intersection. He saw Casimire come off the exit ramp and enter Chef Menteur Highway. Casimire was in the far right lane when defendant Pounds’s car came from the far left lane and struck Casi-mire’s vehicle in front of the hotel. Although he testified that he was fifteen feet from the accident, he admitted later that it was “much farther.” He could not say the make | ¡>or color of the vehicles. He did not see whether Casimire stopped before entering Chef Menteur.' He admitted to turning away from the window and talking to people in the lobby of the hotel before the accident.
Casimire testified that she stopped before entering Chef Menteur Highway. Not seeing anyone, she entered the right lane. She then saw Pounds’s car come from the far left lane. Within five feet of the exit ramp, Pounds’s vehicle struck Ca-simire’s in the front passenger door. She stated that Pounds, who was traveling “really fast,” came at her at an angle and that she tried to avoid the accident by turning toward the grassy shoulder in the direction of the hotel. She testified that the passenger side of Pounds’s car struck her car and that Pounds’s car came to a stop in the middle lane approximately six feet ahead of her vehicle.
Casimire claimed to have sustained injuries to her head, left shoulder, back, and neck. She first went to Gulf Coast Medical Group “maybe a week later, three days, a week later or something.” The medical reports entered in evidence show she first went on December 7, 1995, some two weeks after the accident. She had been to this medical group when she was injured, in her back and neck, in a previous accident the year before. She was not under medical care at the time of the instant accident, having been treated for the previous accident for approximately four months. In her October 1996 deposition, Casimire stated she was injured only in her back, but at trial she claimed she had other injuries, too.
Pounds testified that she was traveling in the right hand lane of Chef Menteur Highway after she passed under the I — 10 overpass. She stated that the accident occurred right at the exit and that she could not have avoided the accident. She explained that, as Casimire came onto Chef Menteur, her vehicle’s right front struck Casimire’s vehicle near the left front tire. She stated that Casimire’s ve-hielejjwas coming off the exit ramp when the accident occurred. She explained that Casimire’s vehicle came to a rest in the grassy area off the shoulder of Chef Ment-eur near a fence on the side of the hotel.
The district court assessed fault at fifty percent to each driver, reasoning that Ca-simire should have seen Pounds before she entered the intersection and that “perhaps” Pounds should have seen Casimire. As to damages for Casimire, the district court found that, according to the medical report, there were no objective symptoms *768 found by the doctor even two weeks after the accident. After reviewing the medical report dated March 17, 1995, some four months after the accident, the court found that Casimire had sustained no physical injuries in the accident.
We will apply the manifest error or clearly wrong standard to the factual findings of the district court. Under this standard, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony or the facts. Stobart v. State of Louisiana Through Dept, of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The reviewing court has a constitutional duty to review facts and to determine whether they support the district court’s judgment. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099 (La.7/5/94), 639 So.2d 216. However, the reviewing court, even if it would have decided differently had it been the trier of fact, should affirm the district court’s judgment unless it is clearly wrong or manifestly erroneous. Id., p. 8, 639 So.2d at 221.
The trial court is vested with great discretion in determining the credibility of witnesses. Canter v. Koehring, 283 So.2d 716 (La.1973). In Rosell v. ESCO, our Supreme Court stated:
| ¿When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
549 So.2d at 844-45 (citations omitted).
Here, the plaintiffs argue that Lipscomb, the disinterested party, testified in support of Casimire’s account of the accident. They also argue that there was evidence of injury and that the court should not have disregarded Casimire’s testimony regarding her injuries.
These arguments are without merit. Given the conflicting testimony about the accident, the trial court was required to make credibility determinations. Even from a cold record, Casimire’s testimony comes across as somewhat confusing, an admittedly minor defect but one that may have influenced the trial court’s assessment of her testimony. Further, a reasonable possibility existed that Lipscomb may not have seen the accident as well as he said he had. Finally, nothing in the record renders Pounds’s testimony completely unworthy of belief. Thus, we cannot say that the district court’s apparent partial acceptance of Pounds’s version of the accident was an abuse of the court’s wide discretion in assessing credibility and determining the weight to be attributed to the testimony. We find no manifest error in the district court’s fault allocation.
| .^Furthermore, the medical reports support the district court’s finding with regard to the lack of objective evidence of physical injuries. Notably, the plaintiffs do not refute the court’s interpretation of the medical reports; instead, they point to Casimire’s testimony and the fact that she reported injuries to the doctor. The treating physician did not testify. Given the appearance of some inconsistencies in Ca-simire’s complaints of injury, and the delay in seeking medical treatment, we cannot say that the district court abused its dis *769 cretion in attributing less weight to Casi-mire’s testimony. Consequently, we detect no manifest error in the district court’s finding that Casimire was not injured in the accident.
For these reasons, the district court’s judgment is affirmed.
AFFIRMED.
JAMES A. GRAY, Judge Pro Tern., DISSENTS.